IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------X
                                                     :
ALEXA BRISTOL                                        :    3:13 CV 911 (JBA)
                                                     :
V.                                                   :
                                                     :
THEODORE TRUDON ET AL.                               :    DATE: APRIL 9, 2014
                                                     :
-----------------------------------------------------X
```

RULING ON PLAINTIFF'S MOTION TO COMPEL AND ON DEFENDANT'S CROSS-MOTION
FOR PROTECTIVE ORDER

On June 26, 2013, plaintiff commenced this lawsuit against defendants Theodore Trudon, Lake Pocotopaug Auto, LLC ["defendant LPA"] and Credit Acceptance Corporation ["defendant CAC"], regarding plaintiffs purchase from defendant LPA of a used 2002 Mini Cooper 2D Hatchback, for which she made a $3,700 down payment and financed the balance under a retail installment sales contract; plaintiff returned the automobile to defendant LPA because it had numerous defects, and through counsel, revoked acceptance of the vehicle and demanded a return of her $3,700 down payment. (Dkt. #1, ¶¶ 11-51). Plaintiff filed this lawsuit for violations of the Truth in Lending Act ["TILA"], 15 U.S.C. § 1601 et seq., the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., and pendent state laws under Article 2 of the Uniform Commercial Code, CONN. GEN. STAT. § 2-101 et seq., the Connecticut Unfair Trade Practice Act ["CUTPA"], CONN. GEN. STAT. § 42-110a et seq., and the Connecticut Retail Installment Sales Finance Act, CONN. GEN. STAT. § 36a-770 et seq. (Id. ¶ 1).[1]

---

[1] As to defendants LPA and Trudon, plaintiff sought return of her $3,700, consequential damages (for the trips to and from Connecticut, the cost for inspecting the car, significant travel expenses, and loss of income), statutory damages of $2,000 under TILA, common law actual damages and common law puntiive damages in excess of $50,000, and actual damages and punitive damages under CUTPA. (Id. ¶¶ 56-61).

As to defendant CAC, plaintiff alleges that defendant CAC was the assignee under the retail installment contract and under the terms of the contract and under CONN. GEN. STAT. § 52-572g, was liable to plaintiff for the $3,700 down payment, and that "CAC has, despite demand, failed and refused to reimburse [p]laintiff to the full extent of its liability for LPA's breaches of warranty, unfair trade practices, fraud and deception."  (Id. ¶¶ 62-64).  On November 25, 2013, defendant CAC filed its Answer, with thirteen defenses.  (Dkt. #20).

On September 3, 2013, plaintiff filed her Motion for Entry of Default for Failure to Plead (Dkt. #16) against defendants Trudon and LPA; that motion was granted six days later. (Dkt. #17).  Sixteen days later, on September 23, 2013, plaintiff filed her Motion for Judgment and Award of Attorney's Fees (Dkt. #19) against these two defendants; on February 19, 2014, U.S. District Judge Janet Bond Arterton granted this motion (Dkt. #23), in which she awarded plaintiff $15,600 in damages – statutory damages of $2,000 under TILA, net actual damages of $2,500, and punitive damages of $11,100.  (At 3).

Under the electronic scheduling order entered by Judge Arterton on October 9, 2013, all discovery is to be completed by June 30, 2014, and all dispositive motions are to be filed by July 30, 2014.  On March 7, 2014, Judge Arterton referred this case to this Magistrate Judge for discovery. (Dkt. #30). Two discovery motions are pending before the Court.  First, on February 13, 2014, plaintiff filed her Motion to Compel Responses to Plaintiff's Interrogatories 2 and 3 and Production Request 8, and brief in support (Dkt. #22),[2] as to which defendant filed its brief and opposition and Cross-Motion for Protective Order on March

---

[2] Attached to plaintiff's brief is a copy of defendant CAC's objections to these three discovery requests (Exh. A); and a declaration by plaintiff's counsel, signed February 13, 2014.

6, 2014. (Dkt. #28).³ Four days later, plaintiff filed her reply brief and objection to defendant's cross-motion. (Dkts. ##31-32). Two weeks later, on March 24, 2014, defendant filed its reply brief. (Dkt. #35).

For the reasons stated below, plaintiff's Motion to Compel (Dkt. #22) is <u>denied without prejudice to renew as appropriate</u>, and defendant's Cross-Motion for Protective Order (Dkt. #29) is <u>denied without prejudice as moot</u>.

## I.  DISCUSSION

These motions concern three discovery requests: Interrogatory 2, which seeks the date defendant CAC "requested the deletion of tradeline from each consumer reporting agency concerning [plaintiff[;]" Interrogatory 3, which seeks the identification of "all documents or communications regarding the reporting of the account that is the subject of this litigation to any consumer reporting agency[;]" and Production Request No. 8, which seeks "[a]ny and all documents, including electronically stored records, concerning communications between [defendant] CAC and any consumer reporting agency (<u>i.e.</u>, Experian, Trans Union, Equifax)." (Dkt. #22, at 1-2 & Exh. A; Dkt. #28, at 6 & Exh. 1). Defendant CAC has objected on the basis of relevancy. (Dkt #22, at 2, Brief at 1, n.2, & Exh. A; Dkt. #28, at 7-12 & Exh. 2).

In her brief, plaintiff argues that defendant CAC is liable to plaintiff for her claims against defendant LPA because defendant CAC is the holder of a retail installment contract

---

³Attached to defendant's brief is a declaration by defense counsel, signed March 6, 2014, with the following eight exhibits: copy of Plaintiff's First Set of Interrogatories and Requests for Production Directed to Defendant Credit Acceptance Corporation, dated October 23, 2013 (Exh. 1); copy of Defendant Credit Acceptance Corporation's Objections and Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, dated November 25, 2013 (Exh. 2); copy of correspondence between counsel, dated December 11, 2013 (Exh. 3); and copies of e-mails between counsel, dated January 10, 12, 16, 20 & 23, 2014. (Exhs. 4-8).

for a motor vehicle, that defendant CAC's liability arises under CONN. GEN. STAT. § 52-572g, that defendant CAC has not complied with plaintiff's valid revocation of acceptance, and that plaintiff was denied an extension of credit based upon information in her credit report, which she believes "was due, in whole or in part, to the continued reporting of the account by [defendant] CAC." (Dkt. #22, Brief at 2; see also id. at 3-8). Plaintiff alleges that the discovery sought is relevant to defendant CAC's Eleventh Defense, namely that plaintiff's claims are barred because defendant CAC complied with the revocation of acceptance. (Id. at 2, citing Dkt. No. 20, ¶ 76). Plaintiff argues that defendant CAC's failure to "delete" plaintiff's contract with defendant LPA effectively "undo[es]" plaintiff's revocation, as it creates a negative credit report, with a credit score that "may be noticeably lower than it was prior to the contract." (Id. at 5-7). Plaintiff further contends that these discovery requests are not only relevant to defendant CAC's Eleventh Defense, but they are also relevant to plaintiff's damages, including actual damages, common law punitive damages, statutory punitive damages, incidental and consequential damages under the UCC, and attorney's fees. (Id. at 7-8). Plaintiff also asserts that plaintiff's credit damage claims are not preempted by the Fair Credit Reporting Act ["FCRA"], 15 U.S.C. § 1681 et seq., but even if plaintiff's state law claims are preempted, the discovery is still relevant in light of defendant CAC's Eleventh Defense. (Id. at 8-11). Lastly, plaintiff seeks $1,200 in attorney's fees for this motion. (Id. at 12 & Declaration).

In its brief in opposition to plaintiff's motion and in support of its cross-motion, defendant CAC represents that prior to the filing of this lawsuit, it acknowledged plaintiff's request for revocation of acceptance of the car, cancelled the contract, notified plaintiff's counsel that no further money was owed by plaintiff to defendant CAC, and made a $3,500 payment to plaintiff. (Dkt. #28, at 2). Defendant CAC emphasizes that plaintiff's complaint,

"[n]ot surprisingly, . . . does not attribute <u>any</u> deceptive trade practices or independent wrongdoing" to defendant CAC and "instead, seeks to hold [defendant CAC] vicariously liable <u>solely in its capacity as [defendant LPA's] assignee</u>." (<u>Id.</u>)(emphasis in original). Moreover, according to defendant CAC, the discovery sought is irrelevant because there are no allegations in plaintiff's complaint regarding "credit harm," which has been acknowledged by plaintiff's counsel, and the discovery requests cannot be relevant to the Eleventh Defense because these discovery requests were served prior to the filing of the Eleventh Defense. (<u>Id.</u> at 2-4, 8-12 & Declaration). Defendant CAC further argues that the discovery sought is designed to "ascertain facts related to or concerning hypothetical, future claims[,]" based upon plaintiff's "mere 'belief'" that she was denied an extension of credit based "in whole or in part, [upon] the continuing reporting of the account" by defendant CAC.  (<u>Id.</u> at 12-13). Lastly, defendant CAC argues that plaintiff's claims are preempted by FCRA, and it seeks attorney's fees from plaintiff.  (<u>Id.</u> at 2, 13-14).

      In her briefs in reply of her own motion and in opposition to defendant CAC's cross-motion, plaintiff points to language in the parties' Joint Rule 26(f) Report of Parties' Planning Conference, filed September 19, 2013 (Dkt. #18), which included among "subjects" for discovery defendant CAC's "reporting of the account to consumer reporting agencies; and . . . any and all defenses raised by [d]efendants." (Dkt. #31, at 2, <u>citing</u> Dkt. #18, at 6,  ¶ V.E.1.h & i).  Plaintiff discounts defendant CAC's "other potential claims" argument and disagrees with defendant's request for attorney's fees. (<u>Id.</u> at 2-3; Dkt. #32).  In its reply brief, defendant CAC denies that it "stipulated" to the relevancy of these discovery requests, the Rule 26(f) Report merely reflects "subjects on which discovery <u>may</u> be needed[,]" (Dkt. #35, at 2-3, 4-5)(emphasis in original), and plaintiff's position with respect to "other potential claims" "highlights [plaintiff's true motivation in propounding" these discovery requests.  (<u>Id.</u>

at 3, 5-6). Defendant CAC reasserts its claim for attorney's fees under these circumstances. (Id. at 6-7).

Plaintiff relies heavily upon Jaramillo v. Gonzales, 132 N.M. 459, 50 P.3d 554 (N.M. Ct. App.), cert. denied, 132 N.M. 288 (2002), in which the plaintiffs had purchased a mobile home, financed through a retail installment contract and security agreement; the plaintiffs were current on their payments until there was a substantial flood in the mobile home, caused by a major defect in the unit, after which plaintiffs revoked their acceptance of the home. 50 P.3d at 556-57. The defendant bank, however, did not acknowledge the letter of revocation but continued to send out routine monthly billing statements, and upon plaintiffs' default, reported a delinquent debt to credit agencies, after which plaintiffs were denied credit twice due to this report. Id. at 557. The trial court found that plaintiffs' "notice of revocation made the notice of default inoperative[,]" so that the defendant bank "acted in bad faith when it refused to acknowledge the revocation," a finding that was supported by "substantial evidence" that the defendant bank was not "truthful[]" in its report to credit agencies. Id. at 563. The New Mexico Court of Appeals affirmed the trial judge on this issue, and many others. Id. at 564.

Defendant CAC appropriately argues that the Jaramillo case is "distinguishable" in that in this case, there are no allegations of bad faith on the part of defendant CAC. (Dkt. #28, at 11). The New Mexico decision is also distinguishable in that the defendant there was the lender, and not the credit agency. Moreover, as pointed out by defendant CAC (Dkt. #28, at 8-9), apparently plaintiff here already has received the damages to which a plaintiff is entitled under these circumstances, namely refund of her purchase price as actual damages, as well as relief from further payments under the retail installment sales contract. See Tirado v. Ofstein, No. HHDCV 05401468S, 2008 WL 902506, at *8-11 (Conn. Super. Ct. Mar. 14,

2008).

Defendant CAC also correctly asserts that plaintiff's complaint, as presently drafted, does not allege that she suffered "credit harm damages pursuant to the UCC[,]" and the terms and phrases "deletion of the tradeline," "extension of credit," "credit harm," and "defamation" do not appear anywhere in the complaint, or in the Eleventh Defense. (Dkt. #28, at 8).   The law is well-established that "discovery requests that are based on pure speculation and conjecture are not permissible[,]" and that "discovery may not be used as a fishing expedition to discover additional instances of wrongdoing beyond those already alleged." In re PE Corp. Sec. Litig., 221 F.R.D. 20, 23-24 (D. Conn. 2003)(internal quotations & citations omitted). See also Wells Fargo Bank, N.A. v. Konover, No. 3:05 CV 1924 (CFD)(WIG), 2009 WL 585430, at *5  (D. Conn. Mar. 4, 2009)(citations omitted).  Defendant CAC appropriately describes this discovery as being based upon plaintiff's "mere 'belief' that she was denied . . . an extension of credit 'due, in whole or in part, to the continued reporting of the account by [defendant CAC]." (Dkt. #28, at 12).  That said, however, the discovery sought would be relevant if plaintiff were able to establish, from sources other than defendant CAC, that such a denial of credit had occurred because of any alleged retention of false credit reporting by defendant CAC, and if the allegations against defendant CAC were amended accordingly.

In light of the conclusion reached here, there is no need to address whether plaintiff's claims are preempted by FRCA. See MacPherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45 (2d Cir. 2011).

Under these circumstances, both parties' requests for attorney's fees are denied.

## II.  CONCLUSION

Accordingly, for the reasons stated above, plaintiff's Motion to Compel (Dkt. #22) is <u>denied without prejudice to renew as appropriate</u>, and defendant's Cross-Motion for Protective Order (Dkt. #29) is <u>denied without prejudice as moot</u>.[4]

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.  <u>See also Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit);** <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 603-05 (2d Cir. 2008)(failure to file timely objection to Magistrate Judge's discovery ruling <u>will</u> preclude further appeal to Second Circuit).

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut.

Dated at New Haven, Connecticut, this 9th day of April 2014.

                                            __/s/ Joan G. Margolis, USMJ___
                                            Joan Glazer Margolis
                                            United States Magistrate Judge

---

[4] If any counsel believes that a settlement conference before this Magistrate Judge would be productive, he or she should contact Chambers accordingly.